IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

*In re:*                                              CASE NO. 6:18-BK-06126-CCJ
                                                      CHAPTER 7

KEVIN EDWARD HAGGERTY,

      Debtors.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

## NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail. You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at <u>400 West Washington Street, Suite 5100, Orlando, FL 32801</u> and serve a copy on the movant's attorney, Howard Law Group, 4755 Technology Way, Suite 104, Boca Raton, FL 33431, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES IV

TRUST ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the

automatic stay with respect to certain real property of the Debtor(s) having an address of 617 Rosegate

Lane, Orlando, FL 32835 (the "Property").  The facts and circumstances supporting this Motion are set

forth in the Affidavit in Support of Motion for Relief from Automatic Stay attached hereto as Exhibit F

(the "Affidavit").  In further support of this Motion, Movant respectfully states:

1.     A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the

Debtor(s) on October 4, 2018, and converted to a Chapter 7 case on November 12, 2019.

2.      The Debtor(s) has/have executed and delivered or is/are otherwise obligated with respect to that certain promissory note in the original principal amount of $268,000.00 (the "Note").   A true and correct copy of the Note is attached hereto as Exhibit A.   Movant is an entity entitled to enforce the Note.

3.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property.   A true and correct copy of the Mortgage is attached hereto as Exhibit B.

4.      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a true and correct copy of which is attached hereto as Exhibit C.

5.      The loan was subsequently modified.   A copy of the Loan Modification Agreement is attached hereto as Exhibit D.

6.      The legal description of the Property is

LOT 28, LAKE ROSE POINTE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 69, OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

7.      As of the petition date, the outstanding unpaid principal balance under the Note was $194,943.57, and the Debtor has defaulted under the terms of the Note and Mortgage by failing to make the payment due on June 1, 2015.

8.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $950.00 in legal fees and $181.00 in costs.

9.      The estimated market value of the Property is $247,622.00. The basis for such valuation is oRANGE County Property Appraiser.  A copy of the valuation is attached hereto as Exhibit E.

10.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is

$444,300.86.

11.     Secured Creditor requests that all communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtor.

12.     Cause exists for relief from the automatic stay for the following reasons:

    (a)     Movant`s interest in the Property is not adequately protected.

    (b)     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property.

13.     Pursuant to 11 U.S.C. § 362(e), Movant requests that in the event a hearing is necessary, said hearing be held within thirty (30) days.

    WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.     That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.     That the 14-day stay of the relief order pursuant to FRBP 4001 be waived.

4.     For such other relief as the Court deems proper.

Respectfully submitted,
HOWARD LAW GROUP

 /s/ Matthew Klein
MATTHEW KLEIN
FLORIDA BAR#: 73529
4755 Technology Way, Suite 104
Boca Raton, FL 33431
Telephone: 954-893-7874
Fax: 888-235-0017
Email: matthew@howardlawfl.com

    **I HEREBY CER**T**IFY** that on January 2, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF participants:

Charles W. Price, Esq., 400 Maitland Avenue, Altamonte Springs, FL 32701

Laurie K. Weatherford, Trustee, PO Box 3450, Winter Park, FL 32790

Office of the US Trustee, 400 West Washington Street, Suite 1100, Orlando, FL 32801

And a true and correct copy was mailed to:

Kevin Edward Haggerty, 617 Rosegate Lane, Orlando, FL 32835

                            /s/ Matthew Klein

# EXHIBIT A



AP#
LN#
MIN

# NOTE

April 20, 2007                    Maitland                    Florida
[Date]                            [City]                      [State]

617 ROSEGATE LANE        ,ORLANDO ,FL 32835
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 268,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

SunTrust Mortgage, Inc                    ,
A Virginia Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    June 1, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    May 1, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at SunTrust Mortgage, Inc., P.O. Box 79041, Baltimore, MD 21279-0041                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,805.57        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

---

**FLORIDA FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-6N(FL) (0005)          Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        MW 05/00        Initials:



AP#
LN#

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.0000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.


AP
LN

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
                         -Borrower        KEVIN HAGGERTY              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                    -Borrower

Without Recourse
TO THE ORDER OF

SunTrust Mortgage, Inc.

*[Sign Original Only]*

Deborah P. Ell___  ___ ___sident

-5N(FL) (0005)                    Page 3 of 3                    Form 3210 1/01

3

05/07/2010

Return To:
A&N Title, Inc.
500 N. Maitland Avenue #111
Maitland, FL 32751

INSTR 20070359198
OR BK 09286 PG 1999 PGS=20
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
06/04/2007 02:43:19 PM
MTG DOC TAX 938.00
INTANG TAX 536.00
REC FEE 171.50

This document was prepared by:
Wendy Thackurdeen
SunTrust Mortgage, Inc
350 N. Lake Destiny Road, Maitland, FL 32751

# EXHIBIT B

-------- [Space Above This Line For Recording Data] --------

AP#:
LN#:

## MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 20, 2007 , together with all Riders to this document.
**(B) "Borrower"** is KEVIN HAGGERTY, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is SunTrust Mortgage, Inc

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010  1/01

-6A(FL) (0005)
Page 1 of 16        MW 05/00     Initials: KH
VMP MORTGAGE FORMS - (800)521-7291

AP#
LN#

Lender is a Virginia Corporation
organized and existing under the laws of    The State of Virginia
Lender's address is 901 Semmes Avenue, Richmond, VA 23224

(E) "Note" means the promissory note signed by Borrower and dated    April 20, 2007
The Note states that Borrower owes Lender Two Hundred Sixty Eight Thousand and
no/100                                                                      Dollars
(U.S. $268,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    May 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005)                    Page 2 of 16                    Initials: [initials]        Form 3010  1/01

AP#:
LN#:

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County          [Type of Recording Jurisdiction]
of                                                    Orange                                          [Name of Recording Jurisdiction]:

## SEE ATTACHED
## EXHIBIT "A" FOR
## LEGAL DESCRIPTION

Parcel ID Number: ███████████                                    which currently has the address of
617 ROSEGATE LANE                                                                            [Street]
ORLANDO                                                      [City], Florida          32835    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

⬤⬤⬤⬤ -6A(FL) (0005)                              Page 3 of 18                Initials: KH          Form 3010  1/01



AP#:
LN#:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

‑6A(FL) (0005)          Page 4 of 18          Initials: KH          Form 3010   1/01



AP#:
LN#:

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

   -6A(FL) (0005)                    Page 5 of 16            Initials: KH       Form 3010   1/01



shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6A(FL) (0005)                          Page 6 of 16            Initials: KH            Form 3010    1/01

AP#:
LN#:

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005)          Page 7 of 16          Initials: KH          Form 3010   1/01

AP#:
LN#:

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6A(FL) (0005)                          Page 8 of 16                    Initials: KH          Form 3010  1/01



AP#:
LN#:

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(FL) (0005)                    Page 9 of 16                    Initials KH                    Form 3010  1/01



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



-6A(FL) (0005)                    Page 10 of 16            Initials: _____        Form 3010  1/01



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6A(FL) (0005)                    Page 11 of 16          Initials: _KH_          Form 3010   1/01

AP#:
LN#: ███████████████

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

AP#
LN#

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0005)                          Page 13 of 16                Initials: KH           Form 3010  1/01



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

AP#:
LN#: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
**Shelly Booth**             KEVIN BAGGERTY              -Borrower

                             617 ROSEGATE LANE, ORLANDO, FL 32835
                             _____ (Address)

_____    _____ (Seal)
**Lovelle Augustine**                                    -Borrower

                             _____ (Address)

_____ (Seal)    _____ (Seal)
-Borrower                            -Borrower

_____ (Address)    _____ (Address)

_____ (Seal)    _____ (Seal)
-Borrower                            -Borrower

_____ (Address)    _____ (Address)

_____ (Seal)    _____ (Seal)
-Borrower                            -Borrower

_____ (Address)    _____ (Address)

-6A(FL) (0005)                Page 15 of 16                Form 3010   1/01

---

AP#:
LN#: 

**FLORIDA**
**ORANGE**

STATE OF FLORIDA,                                           County ss:

The foregoing instrument was acknowledged before me this    APR 2 0 2007                    by

Kevin Haggerty, A single man

who is personally known to me or who has produced  FL Drivers License  as identification.



SHELLY A. BOOTH
Comm# DD0531168
Expires 5/11/2010
Florida Notary Assn. Inc

Notary Public    **Shelly Booth**

-6A(FL) (0005)                              Page 16 of 16          Initials: KH          Form 3010   1/01

---

## Exhibit A

Parcel ID #: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

LOT 28, LAKE ROSE POINTE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 69, OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      20th      day of
April, 2007                                          , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
SunTrust Mortgage, Inc
A Virginia Corporation
(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

617 ROSEGATE LANE      ,ORLANDO ,FL 32835
                    [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
LAKE ROSE POINTE

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

   PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

   A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3150 1/01

                        Page 1 of 3          Initials: KH
-7R (0411)      VMP Mortgage Solutions, Inc. (800)521-7291





**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-7R (0411)                    Page 2 of 3          Initials: KH          Form 3150 1/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
-Borrower

_____ (Seal)
KEVIN HAGGERTY   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

-7R (0411)                    Page 3 of 3                    Form 3150 1/01

# EXHIBIT C

Return to:
Brock & Scott, PLLC
1501 NW 49th Street, Suite 200
Ft. Lauderdale, FL 33309
File #: ▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, PennyMac Corp., ("Assignor"), does hereby grant, bargain, sell, assign, transfer and convey to the following assignee ("Assignee"): PennyMac Holdings, LLC., all of Assignor's rights, title and all beneficial interest under a certain mortgage, dated April 20, 2007, made and executed by Kevin Haggerty to Mortgage Electronic Registration Systems, Inc. as nominee for SunTrust Mortgage, Inc., recorded on June 4, 2007 in Book 9286 at Page 1999 of the Public Records of Orange County, Florida.

This assignment is made without recourse to Assignor and without representation of warranty by Assignor, express or implied.

ASSIGNOR:
[CORPORATE SEAL]

Dated: __11|14|14__

PennyMac Corp.
By: PennyMac Loan Services, LLC, its attorney-in-fact

By: _____

Name: __Brett Gernon__

Title: __Authorized Representative__

## ACKNOWLEDGEMENT

State of _____
County of _____

The undersigned, a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared _____, as _____, on behalf of PennyMac Loan Services, LLC, its attorney-in-fact for PennyMac Corp. She/he is personally known to me or has produced _____ as identification and did / did not take an oath.

WITNESS my hand and official seal this _____ day of _____ 2014.

See Attached

_____
Notary Public:
My commission expires:

State of California
County of _____ Ventura _____ )

On _Nov. 14,_ 2014 _____ before me, _Frank Michael Hoff, Notary Public_____
(insert name and title of the officer)

personally appeared _____ Brett Gernon _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

FRANK MICHAEL HOFF
Commission # 1922568
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2015

Chaundreka Williams
SUNTRUST MORTGAGE, INC.
1001 SEMMES AVENUE
RVW 5303
RICHMOND, VA 23224

## CORPORATE ASSIGNMENT OF MORTGAGE

Orange, Florida
SELLER'S SERVICING # ▓▓▓▓▓▓▓    "HAGGERTY"
INVESTOR'S LOAN # ▓▓▓▓▓▓▓
NEW SERVICER'S # ▓▓▓▓▓▓▓

Date of Assignment: February 26th, 2013
Assignor: SUNTRUST MORTGAGE, INC. at 1001 SEMMES AVENUE, RICHMOND, VA 23224
Assignee: PENNYMAC CORP. at 1761 E. SAINT ANDREW PLACE, SANTA ANA, CA 92705
Executed By: KEVIN HAGGERTY, A SINGLE MAN  To: SUNTRUST MORTGAGE, INC. AT 1001 SEMMES
AVENUE , RVW 5303, RICHMOND, VA 23224
Date of Mortgage: 04/20/2007 Recorded: 06/04/2007 in Book/Reel/Liber: 09286 Page/Folio: 1999 as Instrument
No.: 20070359198 In the County of Orange, State of Florida.

-Assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SUNTRUST
MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS TO SUNTRUST MORTGAGE, INC Dated: 10/26/2011
Recorded: 11/01/2011 in Book/Reel/Liber: 10287 Page/Folio: 8959 as Instrument No.: 20110572812

Property Address: 617 ROSEGATE LANE, ORLANDO, FL 32835


KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $268,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

SUNTRUST MORTGAGE, INC.
On ___2-27-13___

By: _____
    Doyle Mitchell    Asst Vice
President


STATE OF Virginia
COUNTY OF Richmond (City)
On _2/27/13_____ , before me, _Kelly D. Reid_____, a Notary Public in and for
Richmond (City) in the State of Virginia, personally appeared , _Doyle Mitchell, AVP_ Vice President,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Kelly D. Reid
Notary Expires: 9/30/14

```
┌──────────────────────────────────┐
│         KELLY D. REID             │
│        NOTARY PUBLIC              │
│    REGISTRATION # 7342421         │
│  COMMONWEALTH OF VIRGINIA         │
│    MY COMMISSION EXPIRES          │
│     SEPTEMBER 30, 2014            │
└──────────────────────────────────┘
```

(This area for notarial seal)

Prepared By: CW

Chaundreka Williams,  SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE, MERS ADMIN RVW 5003, RICHMOND,
23224 1-800-786-8787

All Notices to Assignee***

ING REQUESTED BY:
ST MORTGAGE, INC.
EFFERSON
MMES AVENUE
DMIN RVW 5003
ND VA 23224

EN RECORDED MAIL TO:
ST MORTGAGE, INC.
MMES AVE
3
ND, VA 23286-9437

DOC # 20110572812    B: 10287 P: 8959
11/01/2011 07:49 AM   Page 1 of 1
Rec Fee: $10.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: INGEO SYSTEMS INC

ntifier No:

ber

phone: 1-888-679-6377

**ASSIGNMENT OF MORTGAGE**

value Received, the undersigned holder of a Mortgage, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,** **NOMINEE FOR SUNTRUST MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor") whose 1901 E VOORHEES STREET SUITE C DANVILLE, IL 61834 , does hereby grant, sell, assign, transfer, and convey, **TRUST MORTGAGE, INC.** (herein "Assignee"), whose address is 1001 SEMMES AVENUE RVW 5003, ND, VA 23224 , a certain Mortgage dated 04/20/2007 and recorded 06/04/2007 , made and executed by **KEVIN TY, A SINGLE MAN** , to and in favor of **SUNTRUST MORTGAGE, INC.** upon the following described property. Such having been given to secure payment of $268000.00 which Mortgage is of record in Book, Volume or Liber No. 09286 , at , as Document No. 20070359198 , of the Records of **Orange County**, State of **FL** , together with the note(s) and therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under age.

Description:

AVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions e-described Mortgage.

TNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 10/26/2011 .
AGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SUNTRUST MORTGAGE INC.,
CESSORS AND ASSIGNS

ORD, Vice-President
F VA
OF Richmond (City) } s.s.
011 , before me LEIZA NORRIS-JONES , Notary Public, personally appeared JANINE FORD , Vice-President nown to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the ument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature ument, the person or entity upon behalf of which the person acted, executed the instrument.
hand and official seal.

RRIS-JONES
n #:
ssion Expires: 05/31/2012

LEIZA NORRIS-JONES
Notary Public
Commonwealth of Virginia
7168927
My Commission Expires May 31, 2012

Drafted By: **JANINE FORD**

# EXHIBIT D

This Instrument Prepared By:

After Recording Return To:
PENNYMAC LOAN SERVICES, LLC C/O
FIRST AMERICAN DOCUMENT SOLUTIONS
450 EAST BOUNDARY STREET
CHAPIN, SOUTH CAROLINA 29036
Loan Number: ███████

--------------------------------------------------- {Space Above This Line For Recording Data} ---------------

Investor Loan #: ███████

# HOME AFFORDABLE MODIFICATION AGREEMENT

| Lender's Loan Number: | |
|---|---|
| MIN: ███████ | MERS Phone: 888-679-6377 |

Borrower ("I")[1]:  KEVIN HAGGERTY

Lender or Servicer ("Lender"):  PENNYMAC LOAN SERVICES, LLC

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 04/20/2007

Loan Number:  ███████

Property Address ("Property"):  617 ROSEGATE LN, ORLANDO, FLORIDA 32835

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

DocMagic eForms
www.docmagic.com

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

      A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

*[Choose one of the following alternate provisions for Section 1(B):]*

[X]   B.    One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

          *[Check box if the borrower has been displaced, but the Property qualifies as "owner-occupied" under Treasury HAMP guidance:]*

[ ]   B.    (i) I lived in the Property as a principal residence immediately prior to my displacement, (ii) I intend to re-occupy the Property as a principal residence in the future, (iii) I do not own any single-family real estate other than the Property, and (iv) the Property has not been condemned;

          *[Check box if the Property is a rental property that does not qualify as "owner-occupied" under Treasury HAMP guidance:]*

[ ]   B.    The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned;

      C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

      D.    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a Trial Period Plan.

*[Check box if following applies:]*

[X]  H.   I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.   **Acknowledgments and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on MARCH 1, 2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect. The first modified payment will be due on MARCH 18, 2014

A.   The Maturity Date will be: FEBRUARY 18, 2054

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan *[Check box if following applies:* [ ] and less Principal in the amount of $ N/A which has been forgiven]. The new principal balance of my Note will be $ 385,867.26 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means

HOME AFFORDABLE MODIFICATION AGREEMENT - Non-GSE - MERS
Form 3157  3/09  (rev. 10/19)                                                                    DocMagic *eForms*
                                                Page 3 of 10                                     www.docmagic.com

interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $ 186,810.34  of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $ 173,153.76  of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of NOVEMBER 1, 2013  , the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 199,056.92  . Interest at the rate of  2.000 % will begin to accrue on the Interest Bearing Principal Balance as of FEBRUARY 18, 2014  and the first new monthly payment on the Interest Bearing Principal Balance will be due on MARCH 18, 2014  . My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 02/18/2014 | 602.80 | 492.54 | 1,095.34 | 03/18/2014 | 60 |
| 6 | 3.000% | 02/18/2019 | 700.31 | Adjusts Annually | Adjusts Annually | 03/18/2019 | 12 |
| 7 | 4.000% | 02/18/2020 | 803.24 | Adjusts Annually | Adjusts Annually | 03/18/2020 | 12 |
| 8-41 | 4.375% | 02/18/2021 | 842.79 | Adjusts Annually | Adjusts Annually | 03/18/2021 | 396 |
| One additional payment of $ 13,656.56, your deferred principal balance, is due on 02/18/2054 for your loan to be paid in full. | | | | | Principal Balance | | 1 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a

letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

*[Check box if following applies:]*
☐ P.   If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

PENNYMAC LOAN SERVICES, LLC

Lender

By: _____          Mortgage Electronic Registration Systems, Inc.
                                         Nominee for Lender

Michael Drawdy
Senior Vice President, Asset Management

Date

3/13/14

_____ (Seal)        _____ (Seal)
KEVIN HAGGERTY           -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                -Borrower

———————————— [Space Below This Line For Acknowledgments] ————————————

LENDER ACKNOWLEDGMENT

STATE OF __FLORIDA__

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____

by _____
(name and title of officer or agent)

of __PENNYMAC LOAN SERVICES, LLC__
(name of corporation acknowledging)

a __DELAWARE_____ corporation, on behalf of the corporation.  He/she is personally known to me
(state or place of incorporation)

or has produced _____ as identification.
(Type of Identification)

Signature _____

Name of Notary _____

(Seal)                                    Title _____

Serial Number, if any _____

**BORROWER ACKNOWLEDGMENT**

STATE OF ___FLORIDA___

COUNTY OF _____

    The foregoing instrument was acknowledged before me this __7__ day of _February 2014_

by __KEVIN  HAGGERTY__

_____

_____

who is personally known to me or who has produced __Fl DL H263505532140__

                                                         (Type of Identification)

as identification.

                             _____
                             Signature

                             _____
                             Name of Notary

                             _____
(Seal)                        Title

PAULA SRINSON
Notary Public - State of Florida
Lee County Expires Aug 14, 2017
Commission # FF 049924

# EXHIBIT E

**RICK SINGH, CFA - ORANGE COUNTY PROPERTY APPRAISER**

| 🔍 Searches | 🔍 Sales Search | 📊 Results | 🔖 Property Record Card | ⭐ My Favorites | Sign up for e-Notify... |

## 617 Rosegate Ln   < 34-22-28-4722-00-280 >



617 ROSEGATE LN. ORLANDO, FL 32835  7/19/2017 10:09 AM
1 of 2 - Click To View Or Upload...

**Name(s)**
Haggerty Kevin E

**Mailing Address On File**
617 Rosegate Ln
Orlando, FL 32835-4427

Incorrect Mailing Address?

**Physical Street Address**
617 Rosegate Ln

**Postal City and State**
Orlando, Fl 32835

**Property Use**
0103 - Single Fam Class III

**Municipality**
Un-Incorporated

### View 2019 Property Record Card

| Property Features | Values, Exemptions and Taxes | Sales Analysis | Location Info | Market Stats |

🖉 Update Information

**Historical Value and Tax Benefits**

Has Homestead in 2020

**2019 Tax Breakdown**



| Tax Year Values | | Land | | Building(s) | | Feature(s) | | Market Value | | Assessed Value | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | ✅ MKT | $68,900 | + | $167,972 | + | $10,750 | = | $247,622 | (12%) | $153,486 | (1.9%) |
| 2018 | ✅ MKT | $53,000 | + | $156,636 | + | $11,250 | = | $220,886 | (2.9%) | $150,624 | (2.1%) |
| 2017 | ✅ MKT | $50,000 | + | $152,703 | + | $12,000 | = | $214,703 | (4.4%) | $147,526 | (2.1%) |
| 2016 | ✅ MKT | $45,000 | + | $148,258 | + | $12,500 | = | $205,758 | | $144,492 | |

| Tax Year Benefits | | | | Original Homestead | Additional Hx | Other Exemptions | SOH Cap | Tax Savings |
|---|---|---|---|---|---|---|---|---|
| 2019 | ✅ | $ | HX | CAP | $25,000 | $25,000 | $0 | $94,136 | **$2,158** |
| 2018 | ✅ | $ | HX | CAP | $25,000 | $25,000 | $0 | $70,262 | **$1,791** |
| 2017 | ✅ | $ | HX | CAP | $25,000 | $25,000 | $0 | $67,177 | **$1,758** |
| 2016 | ✅ | $ | HX | CAP | $25,000 | $25,000 | $0 | $61,266 | **$1,691** |

### 2019 Taxable Value and Certified Taxes

TAX YEAR | 2019 • 2018 • 2017 • 2016

| Taxing Authority | Assd Value | Exemption | Tax Value | Millage Rate | | Taxes | % |
|---|---|---|---|---|---|---|---|
| Public Schools: By State Law (Rle) | $153,486 | $25,000 | $128,486 | 3.8610 | (-4.69%) | $496.08 | 27 % |
| Public Schools: By Local Board | $153,486 | $25,000 | $128,486 | 3.2480 | (0.00%) | $417.32 | 22 % |
| Orange County (General) | $153,486 | $50,000 | $103,486 | 4.4347 | (0.00%) | $458.93 | 25 % |
| Unincorporated County Fire | $153,486 | $50,000 | $103,486 | 2.2437 | (0.00%) | $232.19 | 13 % |
| Unincorporated Taxing District | $153,486 | $50,000 | $103,486 | 1.8043 | (0.00%) | $186.72 | 10 % |
| Library - Operating Budget | $153,486 | $50,000 | $103,486 | 0.3748 | (0.00%) | $38.79 | 2 % |
| St Johns Water Management District | $153,486 | $50,000 | $103,486 | 0.2414 | (-5.78%) | $24.98 | 1 % |
| | | | | 16.2079 | | $1,855.01 | |

### 2019 Non-Ad Valorem Assessments

| Levying Authority | Assessment Description | Units | Rate | Assessment |
|---|---|---|---|---|
| COUNTY SPECIAL ASSESSMENT | STREET LIGHTS - STREET LIGHTS - (407)836-5770 | 1.00 | $62.65 | $62.65 |
| COUNTY SPECIAL ASSESSMENT | WASTE PRO - GARBAGE - (407)836-6601 | 1.00 | $230.00 | $230.00 |
| COUNTY SPECIAL ASSESSMENT | STORMWATER MGMT - RETENTION PONDS - (407)836-7990 | 1.00 | $78.00 | $78.00 |
| | | | | $370.65 |

### 2019 Gross Tax Total:   $2,225.66

#### 2019 Tax Savings Tax Savings

| | | |
|---|---|---|
| Your property taxes without exemptions would be: | | $4,013.43 |
| Your ad-valorem property tax with exemptions is: | − | $1,855.01 |
| **Providing You A Savings Of:** | = | **$2,158.42** |

This Data Printed on 12/31/2019 and System Data Last Refresh

What are you looking to do today? You can also type your question below.



# EXHIBIT F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

*In re:*                                    CASE NO. 6:18-06126-CCJ
                                            CHAPTER 13

KEVIN EDWARD HAGGERTY,

Debtor.

_____/

## AFFIDAVIT AS TO INDEBTEDNESS

STATE OF  CALIFORNIA

COUNTY OF  HUMBOLDT

**BEFORE ME** an officer authorized to take oaths this day personally appeared
ANGELA K. VIALE _____ of SN Servicing Corporation ("Servicer"), who, being
first duly sworn, deposes and says:

1.      I am authorized to sign this affidavit on behalf of Movant, U.S. BANK TRUST
NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES IV TRUST ("Movant").

2.      I am a  ASSET MANAGER _____ of the Servicer, which is Movant's servicing agent for
the subject loan ("the Loan").

3.      Servicer maintains records for the Loan. As part of my job responsibilities for the
Movant, I am familiar with the type of records maintained by the Servicer in connection with the
Loan.

4.      The information in this affidavit is taken from the Servicer's business records. I
have personal knowledge of the Servicer's procedures for creating these records. They are: (a)
made at or near the time of the occurrence of the matters recorded by persons with personal
knowledge of the information in the business record, or from information transmitted by persons

with personal knowledge; (b) the records are kept in the course of the Servicer's regularly conducted business activities; and (c) it is the regular practice of the Servicer to make such records.

5.    The Servicer services the Loan encumbering the Debtor(s); property.

7.    The information contained in the Motion for Relief ("Motion") is derived from the Servicer's business records and all the Loan documents attached to the Motion as exhibits are true and accurate copies of the original documents.

8.    The business records, which I have reviewed, show that there has been a default under the Loan, as the payment contractually due for June 1, 2015 and all subsequent payments have not been made.

9.    The default has not been cured, and there are presently due and owing to the Servicer the following sums of money.

| NAME | AMOUNT |
| --- | --- |
| Unpaid Principal Balance | $194,943.57 |
| Interest | $19,750.91 |
| Escrow | $26,953.34 |
| Fees Assessed | $15,704.00 |
| Late Charges | $150.70 |
| Forbearance Principal | $186,810.34 |
| Borrower Credit | ($12.00) |
| Grand Total | $444,300.86 |

The amount due and owing to Servicer is subject to change.

10.    I certify that the foregoing is true and correct based upon my personal knowledge.

11.     Servicer has retained Howard Law Group to prosecute the Motion and is obligated
to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

**FURTHER AFFIANT SAYETH NAUGHT**.

_Angela K Viale_
Affiant

**SWORN TO** and subscribed before me this _____ day of _____ 2019, by
_____     (Name),        as        an
_____ (Title) of the Secured Creditor.   He/she [ ] is personally
known to me or [ ] produced _____ as identification.

*Please see the attached California notarial certificate. Thank you.*

_____
NOTARY PUBLIC
My Commission expires:
(Notary Seal)

# CALIFORNIA JURAT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )

County of  HUMBOLDT                              )

Subscribed and sworn to (or affirmed) before me on this **31** day

of **December**, 20 **19**, by **Angela Viale**

_____ ,

proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.

Michelle Norton
Comm. #2224400
Notary Public California
Humboldt County
Comm. Expires Jan. 3, 2022

(Seal)

Signature _____ M Norton _____

Comm: Exp: Jan 03, 2022

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this jurat to an unauthorized document and may prove useful to persons relying on the attached document.

Description of Attached Document

This certificate is attached to a document titled/for the purpose of

**Affidavit as to Endebtedness**

containing **3** pages, and dated **12-31-19**.



Method of Affiant Identification

Proved to me on the basis of satisfactory evidence:
☒ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # **91**  Entry # **8**

Notary contact: **707·476·2690**

Other
☒ Affiant(s) Thumbprint(s)  ☐ Describe: _____

© Copyright 2007-2018 Notary Rotary, PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved.   Item Number 101884. Please contact your Authorized Reseller to purchase copies of this form.